UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIKA SPICER,<br><br>Plaintiff,<br><br>v.<br><br>J. STEVEN SHELDON, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: 1:25-cv-00029<br><br>JUDGE BRIDGET MEEHAN BRENNAN<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Before the Court is a motion for summary judgment filed by Sheriff Steven Sheldon, Captain James Sweat, Major Joseph Masi, and Kelly Christiansen (collectively "Defendants"). (Doc. 12.) That motion is now fully briefed. (Docs. 15, 18.) For the following reasons, the Court GRANTS the motion in part as to Plaintiff Erika Spicer's ("Spicer") claims for age discrimination, sex discrimination, and hostile work environment. The Court DECLINES supplemental jurisdiction over Spicer's remaining state claims and REMANDS those claims to state court.

## I. BACKGROUND[1]

Spicer joined the Richland County Sheriff's Office ("Sheriff's Office") on approximately October 1, 2013. (Doc. 15-1 at 884.) She was hired to work in the Payroll Department, where she was responsible for coordinating and directing various payroll-related functions. (*Id.*) Such functions included data entry, maintaining attendance records, and coordinating compliance with

[1] Because Spicer is the nonmoving party, the Court recites the facts in the light most favorable to her. *See Lange v. McGinnis*, 644 F. App'x 672, 673 (6th Cir. 2016).

relevant policies or union contract terms. (*Id.* at 884-85.) In that role, Spicer worked directly under Major Masi. (Doc. 11-7 at 263.)

Dating back to at least December 2021, Spicer's time at the Sheriff's Office was characterized by conflict with Captain Sweat. That month, the Sheriff's Office held its annual awards banquet, but many of Captain Sweat's subordinates did not intend because they were not notified. (Doc. 15-1 at 886.) Embarrassed by the situation, Captain Sweat turned his ire on Spicer. In Spicer's words, Captain Sweat "verbally berated [her] and openly humiliated [her]" for failing to inform his subordinates. (*Id.*) The next month, when there were delays in processing pay increases, Captain Sweat publicly scapegoated Spicer. (*Id.* at 886-87.)

Frustrated with these and other similar incidents, Spicer complained about Captain Sweat's behavior in March 2022.[2] (Doc. 12-12 at 552, 579.) Christiansen investigated the complaint in her role as Richland County's Director of Human Resources. (*Id.* at 493, 579.) Christiansen could not substantiate any of Spicer's complaints. (*Id.* at 603.) In fact, she found the opposite, concluding that "there was no factual basis for any portion of [Spicer's] complaint" and that Spicer made her complaint to retaliate against Captain Sweat for perceived slights. (*Id.* at 563.) As a result, Sheriff Sheldon disciplined Spicer for making intentionally misleading statements by imposing a one-day suspension. (*Id.* at 551.)

In Spicer's telling, this event marked the beginning of a sustained campaign of harassment and retaliation against her. (Doc. 15-1 at 887.) Major Masi placed her on a performance improvement plan. (Doc. 12-9.) And her performance evaluations, on which she had received straight "Outstanding" ratings since 2016, shifted to "Needs Improvement" and

[2] In her affidavit, Spicer states that she made her complaint in February 2022. (Doc. 15-1 at 887.) Contemporaneous documents place her complaint in March, though.

"Meets Requirements." (Doc. 15-2 at 895-930.) Eventually, on March 24, 2024, Spicer received a termination letter, which cited an extensive list of performance deficiencies to justify the firing. (Doc. 15-4.)

Spicer subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter. (Doc. 15-5.) This lawsuit followed. Spicer initially filed in state court, but Defendants removed to federal court. (Doc. 1.) Once discovery concluded, Defendants filed the instant motion for summary judgment. (Doc. 12.)

## II. LEGAL STANDARD

Courts may enter summary judgment only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), when "view[ing] all evidence in the light most favorable to the nonmoving party," *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023) (citation omitted). In determining if a genuine dispute exists, courts may not judge credibility or weigh the evidence. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005).

The moving parties bear the initial burden of showing there is no genuine dispute of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If they satisfy that burden, the burden shifts to the nonmoving party "to come forward with evidence showing that there is a genuine issue for trial." *Id.* "Summary judgment is appropriate where the nonmoving party fails to present admissible evidence to defeat the summary judgment motion." *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 848 (6th Cir. 2010). Spicer, as the nonmoving party, may satisfy this burden by submitting her own affidavit alone. *See Harris*

*v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) (holding that a plaintiff's deposition testimony alone is sufficient to create a jury question). But such an affidavit must still "meet[] the usual requirements for evidence presented on summary judgment." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003).

It is the parties' responsibility to direct courts to relevant facts in the record, and courts need not consider any materials that have not been cited in the parties' summary judgment briefing. Fed. R. Civ. P. 56(c)(3); *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011).

## III. ANALYSIS

Because there is an issue of supplemental jurisdiction, the Court first characterizes Spicer's claims as either federal or state claims because the operative complaint does not always clearly do so.

In her operative complaint, Spicer raises seven claims: (1) age discrimination; (2) sex discrimination; (3) hostile work environment; (4) wrongful discharge; (5) aiding and abetting wrongful discharge; (6) retaliation; and (7) tortious interference with business expectancy. (Doc. 9 at ¶¶ 88-126.) The two claims for discrimination (claims 1 and 2) arise under both Title VII and Ohio law because Spicer expressly cites both federal and state statutes. (*Id.* at ¶¶ 97, 106.) Spicer does not identify the source of law for her claim of hostile work environment (claim 3), so the Court construes it as arising under both Title VII and Ohio law consistent with Spicer's discrimination claims. (*See id.* at ¶¶ 107-09.) Spicer's complaint also says little about her claims for wrongful discharge and related aiding and abetting (claims 4 and 5) (*id.* at ¶¶ 110-19), but in her opposition to summary judgment, she framed them as claims for wrongful discharge in violation of public policy, which arise under state law. (*See* Doc. 15 at 881-82.) Spicer

explicitly limits her claim of retaliation (claim 6) to Ohio law. (Doc. 9 at ¶¶ 120-21.) And although Spicer does not specify, a claim for tortious interference (claim 7) is a paradigmatic state claim. (*See id.* at ¶¶ 122-26.) *See, e.g.*, *Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 F. App'x 181, 193 (6th Cir. 2001).

In sum, Spicer's first three claims—age discrimination, sex discrimination, and hostile work environment—arise under both federal and state law. The remainder arise under state law alone. The Court proceeds to address each federal claim in turn before discussing the state claims.

## A. Federal Claims

### 1. Age Discrimination

Spicer concedes that "her age claim is not sufficiently supported by the record." (Doc. 15 at 862.) Based on this concession, the Court GRANTS summary judgment to Defendants on Spicer's federal age discrimination claim.

### 2. Sex Discrimination

Plaintiffs can "establish a claim of sex discrimination under Title VII by producing either direct or circumstantial evidence of discrimination." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 238 (6th Cir. 2005). In this case, Spicer relies on circumstantial evidence, so the *McDonnell Douglas* burden shifting framework applies. *Id.* (*See* Doc. 15 at 876-77 (arguing under the *McDonnell Douglas* framework).)

At the first step of *McDonnell Douglas*, Spicer bears the burden to establish a prima facie case of discrimination. *Lautermilch v. Findlay City Schs.*, 314 F.3d 271, 275 (6th Cir. 2003). She must demonstrate that "1) [s]he is a member of a protected class; 2) [s]he was qualified for the job and performed it satisfactorily; 3) despite [her] qualifications and performance, [s]he

suffered an adverse employment action; and 4) [s]he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of [her] protected class." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). If Spicer successfully makes a prima facie case, the burden shifts to Defendants to provide a legitimate, nondiscriminatory reason for their treatment of Spicer. *Lautermilch*, 314 F.3d at 275. If Defendants are able to provide such a reason, the burden shifts back to Spicer to show that the proffered reason is pretextual. *Id.* The Court concludes that Spicer has failed to satisfy the fourth element of her prima facie case and therefore does not consider any other part of the *McDonnell Douglas* analysis or any of Defendants' other arguments for summary judgment.

Because Spicer testified that she was replaced by a female employee, not a male employee, the only way she can satisfy the fourth element is by showing that similarly situated male employees were treated differently. (*See* Doc. 11-7 at 259, 264.) Spicer relies on her own affidavit to do so. She offers a bevy of legal conclusions and generic statements, such as:

- "[T]he reasons listed for my termination were fabricated and/or were reasons that were not against [Sheriff's Office] policies and/or the pattern and practice of my similarly situated co-workers who were not terminated or disciplined for the same or worse 'infractions[.]'"

- "Defendants . . . intentionally subjected me to disparate treatment compared to my similarly situated male . . . coworkers[.]"

- "Similarly, as a result of my position in Payroll[,] I am aware that other males . . . were treated more favorably than me[.]"

- "Most male employees who were smokers took regular smoke breaks and often took extended smoke breaks; however, I was singled out for correction despite the fact that my smoke breaks were consistent with that of other employees[.]"

(Doc. 15-1 at 889-91.)

Beyond these general assertions, Spicer points to three specific comparators. First, she discusses Officer Justin Myers, a male employee who Spicer claims was terminated after an inmate passed away due to his failure to report "critical medical information." (*Id.* at 890.) Spicer contends Defendants did not oppose Officer Myers' application for unemployment benefits after his firing while Defendants contested her application. (*Id.*) Second, she identifies Major Dale Fortney, who was purportedly fired for harassing women in the Sheriff's Office. (*Id.* at 891.) His application for unemployment benefits was likewise unopposed. (*Id.*) Third, Spicer points to her own supervisor and a defendant in this suit, Major Masi. (*Id.*; Doc. 11-7 at 263.) She says that Major Masi was able to clock in late, take extended lunch breaks, and clock out early even though she could not. (Doc. 15-1 at 891.)

There are several problems with this effort. To begin with, most of Spicer's affidavit is not competent summary judgment evidence that the Court can consider on the question of similarly situated individuals. So far as Jackson seeks to rely on the generic statements in her affidavit, those statements are too vague and conclusory to be credited at the summary judgment stage. *Lemon v. Norfolk S. Ry. Co.*, 958 F.3d 417, 420 (6th Cir. 2020). That leaves the three listed comparators. But on that front, Spicer's affidavit is still deficient. Under Rule 56, courts may only consider affidavits or declarations made on personal knowledge when deciding summary judgment. Fed. R. Civ. P. 56(c)(4). By its own language, Spicer's affidavit reveals she lacks personal knowledge about the proffered comparators.

Starting with Officer Myers' circumstances, Spicer does not attest to being personally involved in his termination or in approving his application for unemployment benefits. The only explanation that she gives for her knowledge is that "[Officer] Myers' unemployment application was documented by an email which [she] viewed at the time." (Doc. 15-1 at 890.) Learning

about something by reading an email is not personal knowledge, though. It is classic secondhand hearsay. *See Trs. of Nw. Ohio Plumbers & Pipefitters Pension Plan v. Helm & Assocs.*, No. 3:10-cv-0739, 2011 WL 4688784, at *3, 2011 U.S. Dist. LEXIS 115518, at *8 (N.D. Ohio Oct. 4, 2011) ("A post hoc review of documents is not personal knowledge of the events described in the documents."). And although Spicer does not cite her general payroll responsibilities as the source of her knowledge, the Court notes that, even giving that allegation its most favorable interpretation, Spicer has provided no indication that any of her responsibilities involved processing ex-employees' unemployment benefits applications or otherwise overseeing officers like Myers. (*See* Doc. 15-1 at 884-85.)

To be sure, courts have held that review of business records can sometimes supply the personal knowledge that Rule 56 requires. However, they have done so only when a corporate witness is speaking on behalf of a business or other artificial entity. *See, e.g.*, *Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 305 (6th Cir. 2016); *Faulk v. Knoxville HMA Holdings, LLC*, No. 3:21-cv-00755, 2023 WL 6536187, at *5 n.5, 2023 U.S. Dist. LEXIS 174197, at *14 n.5 (M.D. Tenn. Aug. 14, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 6276436, 2023 U.S. Dist. LEXIS 171483 (M.D. Tenn. Sept. 26, 2023). That is because "[t]he personal knowledge requirement works differently in this setting, where a human being [] speaks for a corporation." *Lloyd*, 639 F. App'x at 305. An artificial entity has "personal knowledge" to the extent its business records contain relevant information; that entity can convey this knowledge only via a corporate designee who reviews those records. The situation is different when an individual is speaking for herself, like Spicer is doing in her affidavit. The information she learned from documents cannot be attributed to her personal knowledge in the same way a business's documents can be attributed to that business's personal knowledge.

For similar reasons, Spicer has not presented competent personal knowledge about Major Fortney. Spicer offers no explanation for her knowledge of Major Fortney whatsoever, and again, her general position in Payroll does not fix that problem. (*See* Doc. 15-1 at 891.) Spicer's knowledge of Major Masi's practices in taking breaks and clocking in or out is perhaps a closer question. It seems likely that Spicer needed to work with that information as part of her payroll responsibilities. (*See id.* at 884-85.) That said, the Court need not definitively resolve the question of whether it can consider Spicer's information about Major Masi. Even if the Court could consider all three comparators in Spicer's affidavit, her sex discrimination claim still fails because none of the three comparators are sufficiently similar to Spicer.

For comparators to support a discrimination claim, the comparators and the plaintiff must be similarly situated. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709 (6th Cir. 2006). "The plaintiff need not demonstrate an exact correlation" between the comparators and herself, only that they are "similarly situated . . . in all *relevant* respects." *Id.* at 709-10 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352-53 (6th Cir.1998)). Officer Myers and Major Masi differ from Spicer in material ways. Officer Myers was a correctional officer while Spicer was an administrative payroll employee. (Doc. 15-1 at 890 (describing Officer Myers' work at the Richland County Jail); *id.* at 884 (explaining that Spicer works in Payroll).) Meanwhile, Major Masi was Spicer's direct supervisor. (Doc. 11-7 at 263.) It goes without saying that an employee's supervisor is not similarly situated to that employee. *Green v. CGI Techs. & Sols.*, 911 F. Supp. 2d 513, 522 (N.D. Ohio 2012) (collecting cases). As for Major Fortney, Spicer gives no detail about his role at all. (*See* Doc. 15-1 at 891.) Since Spicer has the

burden to establish her prima facie case, her failure to provide evidence showing that Major Fortney is similarly situated defeats her claim.[3] *See Lautermilch*, 314 F.3d at 275.

Accordingly, the Court finds that Spicer has failed to make out a prima facie case of sex discrimination, and the Court GRANTS summary judgment in favor of Defendants on Spicer's federal sex discrimination claim.

### 3. Hostile Work Environment

"[T]o prevail on a hostile work environment claim, a plaintiff must show that (1) he or she was a member of a protected class; (2) he or she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016). The Court concludes that Spicer's claim fails because the harassment she complained of was not based on sex, and any sex-based harassment Spicer might have faced did not rise to the level of a hostile work environment.

At the outset, though, the Court observes that Spicer again faces an evidentiary problem because much of her affidavit is not competent evidence on issues related to the hostile work environment claim. Many of her assertions are legal conclusions or are too vague to be credited, *see Lemon*, 958 F.3d at 420, such as:

- "Defendants . . . engaged in a systemic [sic] pattern of harassment, to include insults and unjustifiable criticism, for the sole purpose of humiliating me and laying the groundwork for a strategically planned termination, all based upon my . . . sex[.]"
- "[D]efendants failed to take corrective measures and assisted each other in creating such a hostile work environment for me that would . . . result in my termination[.]"

[3] The Court also observes that Major Fortney shares a title with Spicer's direct supervisor, Major Masi, which almost certainly places Major Fortney above Spicer on the organizational chart.

- "The actions of Defendants . . . created and/or permitted [the Sheriff's Office] to be a workplace that was filled with discriminatory intimidation, ridicule and insult . . . that was so severe and pervasive that it altered the conditions of my employment and created an abusive working environment based upon my . . . sex[.]"

- "The conduct of each defendant was frequent, threatening, malicious and humiliating towards me[.]"

(Doc. 15-1 at 888, 892.)

Most of Spicer's more specific assertions must also be disregarded because she lacks personal knowledge. For example, Spicer purported to know that several female employees "resigned because of the way they were treated by Capt[ain] Sweat." (Doc. 15-1 at 891.) Spicer cannot personally know why other employees resigned; only those other employees know their own motivations. Depositions from those former employees, if any were taken, have not been provided to the Court. To the extent Spicer has any knowledge, that knowledge can only come from other employees' statements—classic hearsay. *See* Fed. R. Evid. 801(c). Spicer's claim that she was "aware of female employees at [the Sheriff's Office] who have claimed mistreatment in comparison with the male employees" runs into the same issue. (Doc. 15-1 at 891.) Spicer's statement reveals she did not personally witness the facts underlying those female employees' complaints and knows about those issues only through hearsay. (*Id.* at 891-92.)

Ignoring the portions of Spicer's affidavit that are conclusory or unsupported by personal knowledge leaves only evidence of what is essentially an interpersonal conflict between herself and Captain Sweat. Spicer emphasizes various confrontations between herself and Captain Sweat, including that Captain Sweat blamed and "berated" her publicly for not notifying his subordinates about a Sheriff's Office awards banquet, that Captain Sweat wrongly accused her of failing to process pay increases when it was his fault, and that Captain Sweat solicited complaints about her from his subordinates. (*Id.* at 886-88.) Captain Sweat also purportedly

said to Spicer, "I guess you're gonna have to do something," when discussing a new payroll system that would still require manual entry of pay codes. (*Id.* at 888.) According to Spicer, he said this in "an insulting and embarrassing manner." (*Id.*) Some witnesses also reported that Captain Sweat frequently "us[ed] a condescending tone and demeanor." (Doc. 12-12 at 561.)

None of this is harassment based on sex. Harassment can be based on sex in two ways: either (1) because it is sexual in nature due to the use of sex-specific terms or (2) because the alleged harasser treated members of different sexes differently. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).

There is no evidence Captain Sweat used derogatory terms to talk about Spicer's gender. Nor is there any suggestion that Captain Sweat was motivated to target Spicer because she is female. The closest that Spicer gets to evidence of sex-based animosity is through evidence that "several witnesses did speak of [Captain Sweat] using a condescending tone and demeanor." (Doc. 12-12 at 561.) As one witness, Richard Schuller, put it:

> I tend to avoid [Captain Sweat] if I don't have to talk to him because I don't like the way he talks with me sometimes. Like I'm lesser than him, yet I used to hold a comparable rank in another agency. I'm not a new kid on the block. He has always thought, from the very beginning, that since I came from the Mansfield Police Department that I was trash.

(*Id.* at 717.) Spicer suggests that Captain Sweat targets female employees with this attitude because most of Captain Sweat's subordinates are female, and Schuller observed that he often took this condescending tone with his subordinates. (*Id.* at 718-19.) But in the same breath, Schuller denied that Captain Sweat did so because of his subordinates' gender. Instead, Schuller thought that "it's just more his personality of . . . how he is. His makeup, if you will." (*Id.* at 719.) Elsewhere, Schuller explained that "[Captain Sweat]'s not picking on individuals. It's just

how he talks to people[.]" (*Id.* at 718.) And significantly, Captain Sweat acted this way towards Schuller, a male employee. (*See id.* at 717.) The most this evidence shows is that Captain Sweat was abrasive to everyone below him in rank, not that he was biased against female employees.

In any case, even if it were clear that Captain Sweat was condescending only to female employees, that would still not rise to the level of a hostile work environment. Only harassment that is "sufficiently severe or pervasive to alter the conditions of [] employment" can create a hostile work environment. *Williams*, 643 F.3d at 512 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). Title VII is not a "code of workplace civility," so "[o]ccasional offensive utterances do not rise to the level required to create a hostile work environment." *Id.* at 512-13 (quoting *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)). Captain Sweat's condescending tone combined with discrete instances of criticizing Spicer's work in a disrespectful way does not rise to the level of a hostile work environment under this approach. *See Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828, 859-60 (M.D. Tenn. 2016) (holding that "constant interactions in condescending and intimidating tones" coupled with "regular ridicule and negative comments" did "not rise to the level of sufficient severity to have created a hostile work environment").[4]

The Court therefore GRANTS summary judgment to Defendants on Spicer's federal hostile work environment claim.

[4] To the extent that Spicer argues her poor performance evaluations (Doc. 15-2 at 922-29) and performance improvement plan (Doc. 12-9) are instances of harassment contributing to her hostile work environment claim, she has not shown either was based on sex. The evaluations and performance improvement plan do not cite Spicer's gender, nor is there other evidence showing that her supervisors gave her poor ratings because she is female.

**B. State Claims**

All that remain now are Spicer's state claims. Having dismissed all federal claims, the Court must consider whether to exercise its supplemental jurisdiction over these remaining claims before addressing them on the merits. *See* 28 U.S.C. § 1367(c)(3) (permitting courts to decline supplemental jurisdiction over state claims after it "has dismissed all claims over which it has original jurisdiction").[5] "In determining whether to exercise supplemental jurisdiction, the district court should balance several factors, including judicial economy, convenience, fairness, and comity." *Williams v. Addison Cmty. Schs.*, 168 F.4th 791, 794-95 (6th Cir. 2026). "When, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'" *Koeberer v. Weir*, __ F.4th __, 2026 WL 2874475, at *6, 2026 U.S. App. LEXIS 29402, at *14 (6th Cir. Sept. 24, 2026) (quoting *Stanley v. W. Much. Univ.*, 105 F.4th 856, 867 (6th Cir. 2024)).

The Court exercises its discretion to accept supplemental jurisdiction over Spicer's state claims for age discrimination, sex discrimination, and hostile work environment (claims 1-3) while declining supplemental jurisdiction over her state claims for wrongful discharge, aiding and abetting wrongful discharge, retaliation, and tortious interference (claims 4-7).

---

[5] The Court observes that Spicer's claim for wrongful discharge in violation of public policy can be sustained by showing a violation of "a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, [or] administrative rules and regulations." *Dohme v. Eurand Am., Inc.*, 130 Ohio St. 3d 168, 956 N.E.2d 825, 829 (2011). Although the presence of federal issues in a state claim can create federal jurisdiction, that is the case only when the federal issue is "necessarily raised," among other requirements. *Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013). Here, Spicer's wrongful discharge claim can be resolved solely on state public policy and state employment law. Since the federal issue is not necessary, the Court does not have original jurisdiction over the wrongful discharge claims for purposes of supplemental jurisdiction.

Judicial economy and fairness are imperative in the Court's decision to accept jurisdiction over claims 1 through 3. Spicer's concession on age discrimination equally resolves both her federal and state claims, so there is no reason to decline jurisdiction over her state age discrimination claim. (*See* Doc. 15 at 862.) Meanwhile, Ohio law on sex discrimination and hostile work environment claims mirrors federal law and applies the same standards as federal law. *See Hostettler v. Coll. of Wooster*, 895 F.3d 844, 848 n.1 (6th Cir. 2018) (sex discrimination); *Edwards v. Ohio Inst. of Cardiac Care*, 170 Ohio App. 3d 619, 868 N.E.2d 721, 728 (2007) (hostile work environment). The Court's resolution of the federal sex discrimination and hostile work environment claims therefore resolves the state claims as well. Declining jurisdiction over those claims would at best waste the state court's time by requiring it to replicate this Court's analysis. At worst, if the state court were to reach a different conclusion, it would invite inconsistent results. The Court exercises jurisdiction over these claims and GRANTS summary judgment to Defendants on them.

The remaining state claims are different. They do not apply the same standards as the federal claims and, even though they may be part of the same transaction or occurrence, different facts are material to those remaining claims as compared to the federal claims. For example, Spicer raises the specter of discrimination based on political association, something which had no bearing on the federal age discrimination, sex discrimination, or hostile work environment claims. (*See* Doc. 9 at ¶ 115; Doc. 15 at 862.) Nor did evidence about any retaliatory motive come into play in the Court's analysis of the federal claims even though facts about such motive would be key to Spicer's claim of retaliation. All in all, when it comes to claims 4 through 7, the Court sees little justification for departing from the usual course of declining jurisdiction in these circumstances. The Court thus DECLINES supplemental jurisdiction. Since this case came to

the Court on removal, the Court REMANDS those claims back to state court. *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

## IV. CONCLUSION

The Court GRANTS in part Defendants' motion for summary judgment. The Court GRANTS summary judgment to Defendants on Spicer's federal and state claims for age discrimination, sex discrimination, and hostile work environment (claims 1-3). The Court DECLINES supplemental jurisdiction over all remaining state claims (claims 4-7) and REMANDS them to state court.

**IT IS SO ORDERED.**

Date: September 29, 2026

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE